THE LAW OFFICES OF ALEX CRAIGIE
Alex Craigie (SBN 167766)
*Alex@CraigieLawfirm.com*
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Telephone: (323) 652-9451

Attorneys for Prospective Intervenor SKYWEST
AIRLINES PILOT ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **GREGORY HOROWITZ, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SKYWEST AIRLINES, INC.,**<br><br>**Defendant.** | Case No. 3:21-cv-04674-MMC<br><br>**NOTICE OF MOTION AND MOTION OF PROPOSED INTERVENOR SKYWEST AIRLINES PILOT ASSOCIATION FOR LEAVE TO INTERVENE [FRCP 24]**<br><br>Assigned for all purposes to the Honorable Maxine M. Chesney<br><br>Complaint Filed:  March 22, 2021<br>Action Removed:  June 17, 2021 |
| **SKYWEST AIRLINES PILOT ASSOCIATION (SAPA),**<br><br>**Intervenor.** | |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

(a)     **PLEASE TAKE NOTICE THAT** on December 23, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Maxine M. Chesney presiding, proposed intervenor SkyWest Airlines Pilot Association ("SAPA") will and hereby does move this Court for an order permitting SAPA to intervene in this action on the grounds that, as the representative body for all SkyWest pilots, SAPA has a direct interest in the subject of this action and adjudication of Plaintiff's claims in SAPA's absence will impair and impede SAPA's ability to protect that interest.  Specifically, SAPA's nationwide membership has a clear protectable interest in the outcome of this lawsuit because, depending on its outcome, California-based member pilots could experience significant changes in their bargained-for pay and working conditions.

Alternatively, this Court should exercise its discretion to permit SAPA to intervene because SAPA shares a common interest in legal and factual issues presented in the pending action, including whether California's meal and rest break laws are preempted by the Federal Aviation Administration (FAA) regulations, the Railway Labor Act, and/or the Airline Deregulation Act (ADA) and/or the Dormant Commerce Clause (DCC) and whether SAPA's negotiated pay system must be jettisoned to comply with California's wage statement law. Further, intervention at this stage of the proceedings, before a class has been certified, will not enlarge the issues in this action and will in no way delay or prejudice adjudication of the original parties' rights.  The proposed complaint in intervention is attached as Exhibit 1 to the concurrently filed Declaration of Alex Craigie (the "Craigie Decl.").

This Motion is made pursuant to the Federal Rules of Civil Procedure Rule 24 and is

based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Craigie Decl.; the concurrently filed Declaration of SAPA President Aric Arnold (the "Arnold Decl."); the pleadings and papers on file in this action; and such further argument and material as the court may consider on this matter.


Dated: November 14, 2022                    Respectfully submitted,


                                            By: */s/Alex Craigie*
                                                Alex Craigie

                                            Counsel for Prospective Intervenor
                                            SKYWEST AIRLINES PILOT
                                            ASSOCIATION

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...........................................................................................1

    A.  SAPA is the Sole Representative Body of SkyWest Pilots ......................1

    B.  SAPA Must Intervene to Protect Its Membership Against Threats to Pilots'
        Negotiated Pay Structure and Working Conditions.....................................2

        1.  Enforcement of Horowitz's California Meal and Rest Breaks
            Claims Would Negatively Affect SAPA's Membership ........................2

        2.  Enforcement of Horowitz's Wage Statement Claims Could Impose
            Job Duties on California-Based Pilots that Non-California Pilots
            Don't Have to Do....................................................................................5

II.  LEGAL ARGUMENT ....................................................................................6

    A.  SAPA is Entitled to Intervene as a Matter of Right....................................7

        1.  This Motion is Timely ..........................................................................8

            (a)  SAPA is Intervening at an Appropriate State of the
                Proceeding .................................................................................8

            (b)  SAPA's Intervention Will Not Prejudice Existing Parties ...........9

        2.  SAPA Has a Significantly Protectable Interest .........................................9

            (a)  As the Pilots' Collective Bargaining Representative,
                SAPA's Legally Protected Interest is Well-Established...............10

            (b)  SAPA's Interests Are Directly Related to Plaintiff's Claims........11

                (i)  Pilots Have Adequate Rest and Meal Breaks and
                      Compliance With California's Break Law Timing
                      Requirements Will Ground Them More, Decimate
                      Their Bidding Preferences, Short Their
                      Compensation and Potentially Result in Job Loss............11

                (ii)  Pilots' Pay Stubs Comply With Section 226 and the
                      Relief Horowitz Seeks Would Create Undue
                      Burdens on California Pilots to Track Every Minute
                      of Their Work-Related Tasks .......................................12

        3.  The Disposition of the Action May Impair SAPA's Ability to
            Protect the Interests of its Members ...........................................................13

        4.  Existing Parties Will Not Adequately Protect the Legitimate
            Interests of SAPA's Membership ...........................................................13

            (a)  No Present Party Will "Undoubtedly" Make SAPA's
                 Arguments.................................................................................14

            (b)  No Party is Capable and Willing to Make SAPA's
                 Arguments.................................................................................15

            (c)  SAPA Offers Elements Missing in the Proceedings....................16

    B.  Alternatively, This Court Should Permit SAPA to Intervene................................16

        1.  SAPA's Defense and Claims Shares Common Questions of Law
            and Fact with the Main Action ...........................................................17

        2.  This Motion is Timely ...........................................................................17

         3.  The Court Has an Independent Basis for Jurisdiction Over SAPA's
            Defenses and Claims...........................................................................18

**TABLE OF CONTENTS**
**(continued)**

Page

4.   SAPA's Intervention Will Not Unduly Delay or Prejudice the
Original Parties' Rights ..............................................................................18

III.   CONCLUSION..................................................................................................19

SAPA'S NOTICE OF MOTION FOR LEAVE TO INTERVENE

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Alaniz v. Tillie Lewis Foods*,
   572 F.2d 657 (9th Cir. 1978) .......................................................................9

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) .......................................................6, 7, 13

*Barke v. Banks*,
   No. 820CV00358JLSADS, 2020 WL 2315857 (C.D. Cal. May 7, 2020) .......14, 16

*Briggs v. OS Rest. Servs.*,
   No. LACV1808457JAKAFMX, 2021 WL 7448752 (C.D. Cal. Aug. 18, 2021)...................8

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
   152 F.3d 1184 (9th Cir. 1998) ...............................................................10, 14

*City & Cnty. of San Francisco v. ExxonMobil Oil Corp.*,
   No. C 08-03490 MHP, 2009 WL 1189594 (N.D. Cal. May 4, 2009) ...................18

*Dilks v. Aloha Airlines*,
   642 F.2d 1155 (9th Cir. 1981) .......................................................................8

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ...............................................................9, 11, 17

*Emp. Staffing Servs., Inc. v. Aubry*,
   20 F.3d 1038 (9th Cir. 1994) .......................................................................16

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995) .......................................................................6, 9

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) .......................................................................7

*Garza v. County of Los Angeles*,
   918 F.2d 763 (9th Cir.1990) .......................................................................16

*Golden Gate Restaurant Ass'n v. City and County of San Francisco*,
   No. C 06-06997 JSW, 2007 WL 1052820 (N.D. Cal., Apr. 5, 2007) ...................14

*Greene v. U.S.*,
   996 F.2d 973 (9th Cir. 1993) ...................................................................................9

*Hodgson v. United Mine Workers of America*,
   473 F.2d 118 (D.C. Cir. 1972) ...............................................................................8

*Maclellan Industrial Services v. Local Union*,
   No. 1176, 2006 WL 2884410 (N.D. Cal., Oct. 10, 2006) ..............................10, 13

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ...............................................................................8, 9

*Oman v. Delta Air Lines, Inc.*,
   9 Cal. 5th 762 (2020) .............................................................................................5

*Patriot Contract Services, LLC v. United States*,
   No. C-04-5428 MJJ, 2005 WL 8177446 (N.D. Cal., Apr. 21, 2005) ..............7, 8, 10

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009) .............................................................................7, 19

*Ridgeway v. Walmart Inc*,
   946 F.3d 1066 (9th Cir. 2020) ..............................................................................12

*S. California Healthcare Sys., Inc. v. City of Culver City*,
   No. 221CV05052MCSRAO, 2021 WL 4817846 (C.D. Cal. July 26, 2021) ..........14

*S.E.C. v. Navin*,
   166 F.R.D. 435 (N.D. Cal. 1995)..............................................................................8

*S.E.C. v. United States Realty & Improvement Co.*,
   310 U.S. 434 (1940)...............................................................................................16

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983) .................................................................................16

*Sanguine, Ltd. v. U.S. Dept. of Interior*,
   736 F.2d 1416 (10th Cir. 1984) .............................................................................14

*Trbovich v. United Mine Workers of America*,
   404 U.S. 528 (1972)...............................................................................................13

*U.S. v. State of Or.*,
913 F.2d 576 (9th Cir. 1990) ..................................................................................8

*United States v. City of L.A.*,
288 F.3d 391 (9th Cir. 2002) ................................................................................10

*United States v. State of Or.*,
745 F.2d 550 (9th Cir. 1984) ..................................................................................8

*Venegas v. Skaggs*,
867 F.2d 527 (9th Cir. 1989) ................................................................................17

*W. STATES PETROLEUM ASS'N V. CALIFORNIA OCCUPATIONAL HEALTH AND SAFETY STANDARDS BD.*,
NO. 2:19-CV-01270-JAM-DB, 2019 WL 6324076 (E.D. CAL., NOV. 26, 2019)     10, 11 STATUTES

28 U.S.C.A. § 1367 ................................................................................................18

28 U.S.C.A. § 1367(b) ...........................................................................................18

28 U.S.C. § 1331 ....................................................................................................18

28 U.S.C. § 1332(a) ...............................................................................................17

California Labor Code § 226 .............................................................................5, 12

California Labor Code § 226(a) ...............................................................................5

14 C.F.R. § 117 *et seq.* ........................................................................................10

14 C.F.R. § 117.25 ...................................................................................................6

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 24 ..............................................................................................1, 6, 7

Fed. R. Civ. P. 24(a) ..............................................................................................19

Fed. R. Civ. P. 24(a)(2) ..................................................................................6, 7, 8, 9

Fed. R. Civ. P. 24(a) & (b) ......................................................................................8

Fed. R. Civ. P. 24(b) ....................................................................................7, 16, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The collective bargaining representative for SkyWest's pilots, the SkyWest Airlines Pilot Association ("SAPA") seeks intervention—by right or permission.  Unless SAPA intervenes in this class action proceeding, the interests of its members will be severely prejudiced.  For its California-based members, this includes a potential loss of pay and scheduling flexibility, increased duties that non-California members will not have to bear, loss of California base assignments, or even job loss.  SAPA's intervention in this case is the only way for SAPA to adequately protect the interests of its membership against these and other possible outcomes.

### A.  SAPA is the Sole Representative Body of SkyWest Pilots

SAPA is the collective bargaining representative for pilots and is recognized by SkyWest as the true and only representative body for SkyWest pilots.  Arnold Decl., at ¶ 3.  As the representative body of SkyWest pilots, SAPA listens to pilot concerns and speaks on their behalf.  *Id*. at ¶ 4.  SAPA proposes solutions to SkyWest management on behalf of individual pilots as well as the entire membership on issues such as compensation, benefits, hotels, schedules and safety.  *Id.*  SAPA negotiates with SkyWest about pilot pay structure and working conditions.  *Id.* at ¶ 4.  The results of these negotiations are voted upon by the pilots and, if approved, are incorporated into the SkyWest Pilots Policy Manual, which is SAPA's collective bargaining agreement ("CBA") with SkyWest.  *Id.* at ¶ 5; September 8, 2021 Order Granting Defendant's Motion to Dismiss Claim for Unpaid Overtime, ECF 29, at 3–4 (determination by this Court that the SkyWest Pilots Policy Manual constitutes a CBA under the RLA).

SkyWest pilots become SAPA members upon satisfactory completion of their training and Initial Operating Experience.  *Id.* at ¶ 6.  At present, SAPA has a nationwide membership of approximately 4,754 pilots, many of whom are California-based.  *Id.*

1    In this litigation, Plaintiff claims that *he* is an adequate representative of all current and
2
former SkyWest pilots.  But, as a former SkyWest pilot, Plaintiff does not speak for SAPA or
3
SkyWest's current pilots.  In fact, Plaintiff filed a motion for class certification without even *one*
4
supporting declaration from any current or former SkyWest pilot.
5
6    **B.      SAPA Must Intervene to Protect Its Membership Against Threats to Pilots'**
     **Negotiated Pay Structure and Working Conditions**
7    In this lawsuit, Plaintiff Gregory Horowitz ("Horowitz") seeks to impose on California-
8
based pilots a rigid application of California meal and rest break rules and pay stub requirements.
9
Yet, as explained below, even Horowitz admits that those requirements are incompatible with the
10
realities of pilots' federally imposed duties and safety responsibilities to passengers, crew, and
11
their aircraft.  Arnold Decl. at ¶ 11; Craigie Decl., Ex. 2, August 31, 2022 Deposition Transcript
12
of Gregory Horowitz ("Horowitz Depo.") at 192:7-194:15.
13
14    **1.      Enforcement of Horowitz's California Meal and Rest Breaks Claims**
     **Would Negatively Affect SAPA's Membership**
15
16    One of the laws Horowitz seeks to enforce via injunctive and declaratory relief would
17
require SkyWest to provide its California-based pilots with a 30-minute unpaid, uninterrupted,
18
duty-free meal break by the end of a pilot's fifth hour of work (and again before the end of a
19
pilot's tenth hour of work), as well as the opportunity to take a 10-minute uninterrupted, duty-free
20
rest break for every four hours worked or major fraction thereof ("California Meal and Rest
21
Breaks").  First Amended Complaint ("FAC"), Dkt. 1, Exh. A at ¶¶ 35, 36; *Prayer* at ¶¶ 3-4.  A
22
favorable outcome in this case for Horowitz would effectively require SkyWest to override the
23
bargained-for working conditions in the pilots' CBA and provide such California Meal and Rest
24
breaks to its California-based pilots.
25
26    As even Horowitz admits, uninterrupted, duty-free breaks on California's rigid timing
27
requirements are totally incompatible with a pilot's responsibilities for the safety of his/her
28

passengers and crew during flight.  Horowitz Depo. at 96:11-17, 192:7-194:15 ("Q. And is it your testimony, then, that you don't believe that 30-minute uninterrupted duty-free meal breaks could have occurred while you were flying? A. That's correct."), 197:16-23 (same for rest breaks); Arnold Decl. at ¶¶ 10-14.  SkyWest pilots must follow Federal Aviation Administration (FAA) regulations, which require that pilots remain "Situationally Aware" at all times during flight. Arnold Decl. at ¶ 11; Horowitz Depo. at 33:16-34:4.  Situational Awareness refers to "the accurate perception and understanding of all the factors and conditions within the four fundamental risk elements (pilot, aircraft, environment, and type of operation) that affect safety before, during, and after the flight."  Craigie Decl., Exh. 2, FAA Risk Management Handbook (FAA-H-8083-2) at 5-8.  The FAA also mandates careful management of timing and procedure followed by pilots to enter and exit the cockpit during flight to ensure safety and security of the crew, the passengers, and the aircraft.  Arnold Decl. at ¶ 13; Horowitz Depo. at 97:23-98:25 (discussing safety process for pilot to leave to use the lavatory); 104:9-13 (acknowledging that FAA regulations do not allow a pilot to fly a plane alone with the exception of briefly while the Captain or First Officer is using the lavatory).  Even Horowitz acknowledged that a flight would be "degraded in safety" to have a pilot out of the cockpit and in the cabin for any significant length of time.  Horowitz Depo. at 102:2-7.

A pilot cannot be Situationally Aware and available to attend to a mechanical, crew or passenger emergency while he or she is on an uninterrupted, duty-free California meal or rest break during flight.  Arnold Decl. at ¶ 12.  Such breaks are only possible on the ground.  *Id*.  This could relegate California-based SAPA members to a schedule that puts them on the ground longer, or more frequently (likely both), to enable these breaks.  *Id*. at ¶ 17.  Under the CBA, pilots bid for their preferred schedules based on seniority.  *Id.* at ¶ 15.  And the pilot compensation formula SAPA negotiated with SkyWest, which is consistent with industry

standards and approved by SAPA membership, financially incentivizes pilots to maximize their

time flying.  *Id*. at ¶ 16.  Consequently, SAPA members generally prefer to spend their working

time in the air flying rather than spending unproductive time on the ground at an airport waiting

for a flight (or taking a break).  *Id.*  From SAPA's perspective, if SkyWest must restrict

California-based pilots to shorter flights in order to provide timely California Meal and Rest

Breaks on the ground, then the California-based pilots' negotiated ability to bid on and receive

flight schedules that they prefer will be severely restricted, no matter their seniority.  *Id.*;

Horowitz Depo. 47:1-48:16 (discussing how even Horowitz enjoyed the ability to set his

preferences on flight schedules to automatically apply while bidding on trips he wanted).

It is also very likely that, depending on the outcome of this action, SkyWest may close its

California bases altogether, in which case all California-based pilots will need to transfer, if

possible, to a base in another state.  Arnold Decl. at ¶ 18.  Such transfers are also governed by the

CBA and are permitted on a need and seniority basis.  *Id.*  This raises multiple concerns for

SAPA on behalf of its members.  First, there may not be sufficient transfer opportunities that fit

the desires of all existing California-based pilots, which could lead to job losses.  *Id.*  Second, a

California resident whose base is in another state must travel, typically by taking an unpaid

commuter ("non-rev") flight from their home in California to their base elsewhere, before starting

their normal workday.  *Id.*  SAPA does not want its California-based members to face these

concerns and burdens.  *Id.*

Finally, California-based pilots are often staffed on flights/pairings with non-California-

based pilots.  *Id.* at ¶ 19.  If SkyWest is forced to schedule around California Meal and Rest

Breaks for its California-based pilots, SAPA is concerned that (1) non-California-based pilots

who happen to be on a flight with a California-based pilot will be forced to be grounded to

accommodate the meal and rest break rules of California state laws; and/or (2) non-California-

based pilots might be required to keep working while California-based pilots are provided

California Meal and Rest Breaks; and/or (3) that California-based pilots (if any exist) will be

relegated to a secondary sub-class of pilots who can only bid for and be scheduled for one to three

short flights of an hour or less in a day, so as to try to ensure that they are on the ground for

timely California breaks.  *Id.*  These potential outcomes will no doubt cause friction and discord

among SAPA members nationwide; not to mention the unfairness to the California-based pilots.

This is unacceptable, not only for California-based members, but for SAPA's entire nationwide

membership.  *Id.*  SAPA could envision a magnification of the current pilot shortage at

SkyWest's California bases as California-based pilots elect to transfer or leave SkyWest if this is

the outcome.  *Id.* at ¶ 18.

> **2.  Enforcement of Horowitz's Wage Statement Claims Could Impose Job Duties on California-Based Pilots that Non-California Pilots Don't Have to Do**

Like most commercial pilots, SAPA's pilots are compensated based on the most favorable

of many different pay formulas that SAPA negotiated with SkyWest.  Arnold Dec. at ¶ 21.  Pilots

have real time access to all of the information on which these formulas are calculated by

SkyWest.  *Id.*  Although the negotiated pilot compensation package is lawful (*see Oman v. Delta

Air Lines, Inc.*, 9 Cal. 5th 762 (2020)), application of the formulas does not translate simply into

the seven items prescribed by California Labor Code section 226(a).  Section 226(a) requires that

a wage statement identify all hours worked at a corresponding "hourly" rate, as well as the "total

hours worked" in the pay period.  Currently, SAPA's pilots' pay stubs show the total "credit"

hours worked and the total "duty" hours worked.  Arnold Decl. at ¶ 22.  If this Court holds that

showing the duty hours and credit hours complies with Section 226, fine.  But if this Court holds

that reporting "total hours worked" means that California pilots must record every minute

throughout every flying day that they are performing a work-related task, this will create a burden

on California-based pilots that no other SkyWest pilot must do—and with zero benefit to the pilots.  *Id*. at ¶ 22.

A pilot's "duty time" is the measure used to determine the mandatory rest for a pilot as dictated by the FAA's regulations.  *See* 14 C.F.R. § 117.25.   While "duty time" includes all time that pilots are subject to their employer's control, during some portions of designated "duty time," a pilot might not be performing work-related tasks for the airline.  To the extent Horowitz argues that, in order to comply with California's pay stub requirements, pilots should be paid some hourly rate for every minute they perform any work-related task, then Horowitz is seeking to throw out SAPA's negotiated pay plan (only for California-based pilots), as explained further below.  All of this flies in the face of the pilots' bargaining rights, preferences, and negotiated compensation structure.  Arnold Decl. at ¶ 23.

In short, Horowitz is seeking relief in this Court that would directly affect SAPA's membership, frustrate the bargained-for pay structure and work conditions negotiated by SAPA on behalf of all of its pilots (not just its California-based members), and force California-based pilots to be treated unfavorably as compared to their nationwide counterparts.  SAPA must intervene to protect the interests of its membership through participation in this case.

## II.    LEGAL ARGUMENT

Under the Federal Rule of Civil Procedure Rule 24, intervention may be of right or by permission.  A party retains the *right* to intervene if: (1) the applicant has made a timely motion to intervene; (2) the applicant has a significant and protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant is situated such that the disposition of the action may – as a practical matter – impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by existing parties.  Fed. R. Civ. P. 24(a)(2); *Arakaki v. Cayetano*, 324 F.3d 1078, 1082-83 (9th Cir. 2003); *Forest*

*Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

Alternatively, courts may *permit* a nonparty to intervene under Rule 24(b).  Under that rule, on "timely motion," the court "may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  Applying Rule 24(b), courts generally assess (1) whether there is an independent ground for jurisdiction, (2) whether the motion is timely, and (3) whether a claim or defense has a question of law or fact in common with the main action.  *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009).

Further, Rule 24 has long been "liberal[ly] constru[ed] in favor of applicants for intervention."  *Arakaki*, 324 F.3d at 1082-83 (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)); *Wilderness Soc'y*, 630 F.3d at 1179 ("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." (quoting *United States v. City of L.A.*, 288 F.3d 391, 397–98 (9th Cir. 2002)).

As discussed below, SAPA has a right to intervene in this action.  But, in any event, the Court should permit SAPA to intervene.

## A.    SAPA is Entitled to Intervene as a Matter of Right

As a preliminary matter, non-parties must have standing to intervene.  However, "Article III standing requirements are relaxed in the case of intervenors."  *Patriot Contract Services, LLC v. United States*, No. C-04-5428 MJJ, 2005 WL 8177446, at *2 (N.D. Cal., Apr. 21, 2005) (holding that unions and labor associations had standing to intervene as it met the requirements of Rule 24(a)(2) and because if the plaintiffs were victorious, the harm the applicants would suffer was immediate and concrete).  Specifically, "[a]n intervenor [by right] applicant need only meet

the requirements of Rule 24(a)(2)." *Id.*

As explained in detail below, SAPA meets the requirements of Rule 24(a)(2) and its members would immediately be harmed if Horowitz is successful in enforcing California wage and hour law, meal and rest break requirements, and/or pay stub requirements.  SAPA therefore has standing to intervene in this case.

## 1.      This Motion is Timely

"Timeliness is the threshold requirement for intervention." *U.S. v. State of Or.*, 913 F.2d 576, 588 (9th Cir. 1990) *cert. denied, sub nom. Makah Indian Tribe v. United States*, 501 U.S. 1250 (1991); Fed. R. Civ. P. 24(a) & (b).  However, it "is a flexible concept." *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981).  Timeliness is judged by considering "the stage of the proceedings," "the reason for any delay in moving to intervene," and "whether the parties would be prejudiced." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996); *Patriot Contract Services*, 2005 WL 8177446, at *1.

### (a)      SAPA is Intervening at an Appropriate State of the Proceeding

"To be timely, an intervenor does not have to move to intervene immediately." *S.E.C. v. Navin*, 166 F.R.D. 435, 439 (N.D. Cal. 1995).  Instead, "the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness." *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 129 (D.C. Cir. 1972) (reversing denial of union members' application to intervene filed *seven years* into litigation).  Instead, courts have held that intervention is timely where, as here, the movant sought to participate in a new phase of litigation. *United States v. State of Or.*, 745 F.2d 550, 552 (9th Cir. 1984); *Briggs v. OS Rest. Servs.*, LLC, No. LACV1808457JAKAFMX, 2021 WL 7448752, at *8 (C.D. Cal. Aug. 18, 2021) (finding that filing to intervene after "extensive proceedings" and "a substantial amount of discovery" was not a factor that "weigh[ed] heavily against intervention").This Court has not yet decided the crucial

questions of whether a class should be certified, or liability exists.  Class determination is both a

new phase of this litigation and a logical place for SAPA to intervene to protect the interests of its

membership.  In fact, SAPA would seek to oppose class certification because Plaintiff does not

adequately represent the interests of the purported class, and SAPA members expressly oppose

this action and the relief Horowitz seeks.  Arnold Decl. at ¶ 8.

### (b)     SAPA's Intervention Will Not Prejudice Existing Parties

SAPA's intervention will not cause any prejudice.  Prejudice has only been found where

serious inequities arise due to delay.  *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir.

1978) (affirming denial of intervention after settlement approved); *Northwest Forest Resource

Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (noting that intervention "before the

district court had made any substantive rulings" would not prejudice existing parties).  Here,

discovery is ongoing, class certification is an open question, the parties have not negotiated

toward a settlement, and the Court has not issued any substantive rulings.  There is no prejudice.

This motion is timely and should be granted.

### 2.     SAPA Has a Significantly Protectable Interest

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest

that is protected under some law, and (2) there is a 'relationship' between its legally protected

interest and the plaintiff's claims."  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.1998).

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical,

threshold inquiry. No specific legal or equitable interest need be established."  *Greene v. U.S.*,

996 F.2d 973, 976 (9th Cir. 1993), *aff'd*, 64 F.3d 1266 (9th Cir.1995).  Further, where "the

injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third

party's legally protectable interests, that party satisfies the 'interest' test of Fed.R.Civ.P. 24(a)(2)

[and] he has a significantly protectable interest that relates to the property or transaction that is

the subject of the action." *Forest Conservation Counsel*, 66 F.3d at 1494.

### (a)    As the Pilots' Collective Bargaining Representative, SAPA's Legally Protected Interest is Well-Established

SAPA, like other collective bargaining representatives and labor unions, has "a legally-protected interest in the outcome of a suit . . . challeng[ing] the validity of laws and regulations establishing minimum labor standards that protect union members." *W. States Petroleum Ass'n v. California Occupational Health & Safety Standards Bd., No. 2:19-CV-01270-JAM-DB, 2019 WL 6324076, at *2 (E.D. Cal. Nov. 26, 2019)*; *United States v. City of Los Angeles*, 288 F.3d 391, 398-99 (9th Cir. 2002) (finding police officers' union had a protectable interest because the complaint sought injunctive relief affecting the union's members); *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (finding labor union entitled to intervene as of right to defend state prevailing wage law claim by employer reasoning that union had "significant interest" in its members receiving the prevailing wage for their services); *Maclellan Industrial Services v. Local Union*, No. 1176, 2006 WL 2884410, at *5 (N.D. Cal., Oct. 10, 2006) (finding that a union had a sufficiently protectible interest as the subject matter of the case directly affected the enforceability of the CBA and would affect the union's contractual rights); *Patriot Contract Services*, 2005 WL 8177446, at *1-3 (holding that the certified representative organization of workers with collectively-bargained rights to crew the certain vessels had a protectable interest in the CBAs entered into with the employer that covered the wages, hours, and working conditions of employees who could be adversely affected depending on the outcome of the proceeding).

Here, SAPA asserts, on behalf of its members, a legally protectible interest in its' members' wages and working conditions which are the subject of its CBA negotiated with SkyWest and which are governed and protected under the federal regulations which dictate

maximum duty periods and mandatory rest.  *See, e.g.*, 14 C.F.R. § 117 *et seq*.

**(b)    SAPA's Interests Are Directly Related to Plaintiff's Claims**

The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant."  *Donnelly*, 159 F.3d at 410; *Western States*, 2019 WL 6324076, at *2.  Here, Horowitz seeks to recover what he claims are unpaid wages for pilots, and he wants to affect pilots' working conditions. In fact, Horowitz's intended declaratory and injunctive relief would drastically affect SAPA's membership, as it would require SkyWest to provide California Meal and Rest Breaks which could eliminate their base and scheduling preferences; it would potentially throw out SAPA's negotiated pay formulas for California-based pilots; it could mandate that California-based pilots begin tracking every minute spent on work-related tasks throughout their flying days; and ultimately it could lead to job loss.

(i)    Pilots Have Adequate Rest and Meal Breaks and Compliance with California's Break Law Timing Requirements Will Ground Them More, Decimate Their Bidding Preferences, Short Their Compensation and Potentially Result in Job Loss

If Horowitz has his way, in order to facilitate California Meal and Rest Breaks, SkyWest will likely be required to limit scheduling of California-based pilots to very short flights, or "hops," to ensure they are on the ground and released from duty to take them because such breaks are incompatible with a pilot's responsibilities during flight.  Arnold Decl. at ¶ 17.  This would also erase the California pilots' ability to rely on seniority status to bid on and receive flight pairings of their preference.  These break claims would not only affect pilot working conditions but would also impact their pay.  The pay structure negotiated by SAPA and approved by its membership incentivizes pilots to maximize their time actually flying—which is the primary and most important responsibility of the pilots, and what they prefer to be doing.  *Id.* at ¶ 16.  If they must be on the ground to take breaks, they will be flying less, and therefore earning less money.  *Id.* at ¶ 17.

1    These adverse effects on California pilots assume that SkyWest continues to even allow

2    pilots to be based in California given the harsh impacts this scheduling may have on SkyWest's

3    ability to provide service under its mainline partner contracts.  But SAPA believes that it is more

4    likely that SkyWest will discontinue its California bases, thus reducing the ability for its pilots to

5    live in or near the California cities of their choice.  Arnold Decl. at ¶ 18.

6                              (ii)    Pilots' Pay Stubs Comply with Section 226 and the Relief
                                       Horowitz Seeks Would Create Undue Burdens on California
7                                      Pilots to Track Every Minute of Their Work-Related Tasks

8    SkyWest tracks each pilots' total *duty* hours and shows that total on their pay stubs.

9    Arnold Decl. at ¶ 22.  Total duty hours are those hours during which pilots are "subject to"

10   SkyWest's "control," and therefore *working*.  *See, Ridgeway v. Walmart Inc*, 946 F.3d 1066, 1077

11   (9th Cir. 2020) (finding that truck drivers were subject to the control of Walmart and therefore

12   were working even while sleeping in their trucks on long hall drives and affirming that "whether

13   an employee deserves pay in California turns on whether the employer exercised control over the

14   employee"); *see also*, Wage Order 9, §2(H) (defining "hours worked" with reference to all time

15   that the employee is "subject the control of the employer").  Since total duty hours worked are

16   currently on pilots' pay stubs, they are compliant with Labor Code section 226.

17   But if Horowitz claims that printing total duty hours on the pay stubs is overinclusive (and

18   thus not compliant) because it may include, for example, time when pilots may actually be

19   sleeping on a "continuous duty overnight" trip or may be eating lunch or dinner at an airport

20   during a layover, then SAPA disagrees.  In that case, what Horowitz really wants is for each and

21   every current California-based pilot (which no longer includes him) to track every minute spent

22   on any work-related task during a duty period, so that the total can be reflected on a California

23   pay stub—even though this metric is irrelevant to their pay formulas.  This burden is going to fall

24   unfairly on the California-based pilots themselves, because pilots are professionals with some

25   level of autonomy so long as they ensure that the needs of the aircraft, the flights and the

passengers are being met.  Arnold Decl. at ¶ 23.  And only California-based pilots will be tasked with doing this administrative and burdensome task.  Nor does that extra burden benefit the pilots whatsoever.  *Id.*  SAPA does not support Horowitz's claim.

What's more, because the pilot pay formulas are more complex than one straight hourly wage rate for every minute spent on work-related activities, if Horowitz is successful on his pay stub claim, SAPA and SkyWest might be required to throw out their negotiated pay structure for California-based pilots (but not for pilots based in any other state).  This would not be acceptable to SAPA.  *Id.* at ¶ 24.

Clearly, SAPA has significant protectible interests in this action.

### 3.    The Disposition of the Action May Impair SAPA's Ability to Protect the Interests of its Members

To meet the impairment prong, applicants need only demonstrate that "disposition of the lawsuit may adversely affect the applicant's interest if intervention is not granted."  *Maclellan*, 2006 WL 2884410, at *6 (quoting *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)).  The FAC seeks declaratory and injunctive relief that would require drastic change in the pay and working conditions for California-based SkyWest pilots, as set forth above.  FAC, *Prayer*, at ¶¶ 3-4.  If not allowed to participate via intervention, SAPA cannot protect the interests of its members.

### 4.    Existing Parties Will Not Adequately Protect the Legitimate Interests of SAPA's Membership

Typically, "[t]he burden on proposed intervenors [to show] inadequate representation is minimal, and [will] be satisfied if they [can] demonstrate that representation of their interests 'may be' inadequate."  *Arakaki*, 324 F.3d at 1086; *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538, n.10 (1972).  Courts consider three factors when determining the adequacy of representation: (1) "whether the interest of a present party is such that it will undoubtedly make

all the intervenor's arguments;" (2) "whether the present party is capable and willing to make such arguments;" and (3) "whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect." *People of State of California v. Tahoe Regional Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986) (emphasis added).  SAPA submits that the existing parties are inadequate to fully protect the interests of SAPA and its members.

**(a)       No Present Party Will "Undoubtedly" Make SAPA's Arguments**

There is no reason to conclude that either of the existing parties—Horowitz or SkyWest—will "undoubtedly" make all arguments anticipated by SAPA.  Courts have repeatedly recognized that a union or collective bargaining representative satisfies this element where "the employment interests of . . . [its] members were potentially more narrow and parochial than the interests of" existing parties.  *Mendonca*, 152 F.3d at 1190; *Golden Gate Restaurant Ass'n v. City and County of San Francisco*, No. C 06-06997 JSW, 2007 WL 1052820, at *3 (N.D. Cal., Apr. 5, 2007).  A party adverse to the proposed intervenor cannot adequately represent its interests.  *See Sanguine, Ltd. v. U.S. Dept. of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984) (relying on 7A C. Wright & A. Miller, Federal Practice and Procedure § 1909 at 523–32 (1972)).  Furthermore, a court cannot assume that an employer and a union will "make the same arguments, prioritize the same objectives, and respond to [plaintiff's] accusations in the same ways during all stages of litigation. *S. California Healthcare Sys., Inc. v. City of Culver City*, No. 221CV05052MCSRAO, 2021 WL 4817846, at *2 (C.D. Cal. July 26, 2021).  The Ninth Circuit "was clear that where the existing state defendants and the union applicants for intervention shared an identical ultimate goal of upholding state law, the narrower interests of intervening unions sufficiently demonstrated inadequate representation [by the existing state defendants]."  *Barke v. Banks*, No. 820CV00358JLSADS, 2020 WL 2315857, at *4 (C.D. Cal. May 7, 2020) (citing *Mendonca*, 152 F.3d at 1190).

1   Clearly, SAPA's position is opposed to Plaintiff.  It opposes Horowitz's claims based on

2   the impact that recovery thereunder would undoubtedly have on pilot working conditions and/or

3   pay structure.  Arnold Decl. at ¶ 8.  As a party adverse to SAPA, Horowitz cannot adequately

4   represent its interests or the interests of its members—and most especially, SkyWest's current

5   California-based pilots.

6       SkyWest and SAPA have different motivations and there is no basis to expect SkyWest

7   will make all of SAPA's arguments, or voice them in the same way.  SkyWest is a publicly held

8   regional airline (Nasdaq: SKYW) with approximately 14,072  employees (as of 2021).  SAPA is

9   the representative association for SkyWest's pilots with approximately 4,754 members.  SkyWest

10  and SAPA are constantly on opposite sides of the table negotiating changes to pay or working

11  conditions.  Arnold Decl. at ¶ 5.  SkyWest will look out for its own interests in defending this

12  case.  These interests will undoubtedly be financially driven and may not include voicing all

13  arguments that may benefit the interests of SAPA's membership, as SAPA will.

14      Nor can it be assumed that SAPA and SkyWest will make the same arguments or

15  prioritize the same objectives while responding to Plaintiff's allegations at each stage of the

16  litigation.  Further, given the issue of possible injunctive relief and the negative outcome that such

17  relief would have on its membership, SAPA should be included in any negotiations toward a

18  potential resolution.  It should not be just a question of "making arguments," but of shaping

19  outcomes.  SAPA needs to intervene to adequately protect its members.

20      **(b)    No Party is Capable and Willing to Make SAPA's Arguments**

21      Plaintiff will not make SAPA's arguments, and it is hard to imagine that SkyWest is

22  capable and willing to make all of them, either.  SAPA opposes Plaintiff.  SkyWest and SAPA

23  regularly negotiate at arm's length to reach agreement on terms that are encapsulated in the CBA.

24  Arnold Decl. at ¶ 5.  As this lawsuit threatens those very terms, SAPA cannot assume that

SkyWest will fully protect the pilots' interests.  And SkyWest's legal position and strategy in this matter is bound by its obligations under its contracts with the major airlines, and by its position as a regional airline in a highly competitive marketplace, a large-scale national employer, and a publicly traded company.

**(c)     SAPA Offers Elements Missing in the Proceedings**

Courts consider whether "the intervenor offers a perspective which differs materially from that of the present parties to this litigation." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).  Here, as in *Barke v. Banks*, "[a] valuable perspective, and a necessary element that might otherwise be neglected by the existing parties is added to the matter in allowing" SAPA to intervene.  2020 WL 2315857 at *4 (finding labor union's interests inadequately represented by current parties, justifying intervention).

Until now, this Court has heard only from one former pilot—Plaintiff—and his former employer, SkyWest.  SAPA will bring a fresh perspective with the collective voice of several thousand currently employed SkyWest pilots, a large cross-section of whom could be directly and adversely impacted in their pay and working conditions depending on the outcome of this case. SAPA brings an entirely new viewpoint and one this case cannot be fairly adjudicated without recognizing and hearing.

**B.     Alternatively, This Court Should Permit SAPA to Intervene**

Although SAPA has a legally protectable interest in this matter, the requirement of making a showing of a legally protectable interest does not apply to permissive intervention under Rule 24(b).  *S.E.C. v. United States Realty & Improvement Co*., 310 U.S. 434, 459 (1940) (finding that rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."); *Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994).

If the Court does not find that SAPA can intervene as of right, it may still permit SAPA to intervene.  *Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir.1990) ("Where a would-be intervenor does not demonstrate interests sufficiently weighty to warrant intervention as of right, the court may nevertheless consider eligibility for permissive intervention under Fed.R.Civ.P. 24(b)(2)."), *cert. denied*, 498 U.S. 1028 (1991).  To be permitted to intervene, an applicant "must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412.  Additionally, "[i]n exercising its discretion to grant or deny permissive intervention, a court must consider whether the intervention will 'unduly delay or prejudice the adjudication of the rights of the original parties.'" *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) (quoting F.R.C.P. 24(b)).

### 1.    SAPA's Defense and Claims Shares Common Questions of Law and Fact with the Main Action

SAPA's claims and defenses share common questions of law with the main action. Specifically, (1) whether the California Meal and Rest Break laws are preempted by: (a) Federal Aviation Administration ("FAA") regulations; (b) the Railway Labor Act ("RLA"); (c) the Airline Deregulation Act ("ADA"); and/or (d) the Dormant Commerce Clause ("DCC"); (2) whether listing duty hours satisfies California's wage statement requirements; (3) whether Horowitz is entitled to injunctive relief; and (4) whether Horowitz fails to satisfy the requirements to certify a class.

### 2.    This Motion is Timely

As previously discussed, this motion is timely.  SAPA seeks intervention at an appropriate stage in this litigation, as the next issue pending before the Court is whether to certify a class, and SAPA should have a voice in the resolution of that question.

### 3.   The Court Has an Independent Basis for Jurisdiction Over SAPA's Defenses and Claims

This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because this is an action between "citizens of different States" and the "matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs."  SkyWest removed this action from state court because diversity jurisdiction existed.  The amount in controversy is over $75,000, and Horowitz and SkyWest are citizens of different states.  SAPA's involvement does not change this, as it is a citizen of the same state as SkyWest.

This Court also has subject matter jurisdiction over the claims and defenses SAPA seeks to raise, specifically the possible federal preemption of Plaintiff's claims.  *See* 28 U.S.C. § 1331. Furthermore, this Court may exercise supplemental jurisdiction over other defenses SAPA asserts in its answer-in-intervention because those defenses are related to claims in the action.  *See, supra*; 28 U.S.C.A. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."); Craigie Decl., Exh. 1.  Notably, SAPA is not attempting to intervene on the side of Plaintiff, and therefore the intervenor-as-plaintiff limitation for diversity jurisdiction does not apply.  28 U.S.C.A. § 1367(b); *City & Cnty. of San Francisco v. ExxonMobil Oil Corp*., No. C 08-03490 MHP, 2009 WL 1189594, at *4 (N.D. Cal. May 4, 2009) (discussing how section 1367(b) does not extend to an intervening defendant).

### 4.   SAPA's Intervention Will Not Unduly Delay or Prejudice the Original Parties' Rights

Permitting SAPA to intervene at this juncture will not delay the proceedings or prejudice

the rights of Horowitz or SkyWest.  Again, SAPA seeks intervention at a logical stage in the

litigation.  Horowitz has just moved for class certification and SAPA is unaware of any prior

settlement negotiations.

Far from prejudicing any party's rights, SAPA's involvement will bring clarity to critical

questions before the Court.  Specifically, whether the class members that Horowitz purports to

represent truly desire the relief sought, including injunctive relief that will adversely impact

SAPA members' pay and working conditions.  Even if Horowitz or SkyWest could point to

prejudice (they cannot), any such prejudice is clearly outweighed by the importance of permitting

SAPA, whose members' pay and working conditions will be impacted, to have a voice in the

outcome.  *See, Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 956 (9th Cir. 2009)

(acknowledging court's discretion to balance potential prejudice against value of intervenor's

involvement).

## III.    CONCLUSION

For the foregoing reasons, SAPA respectfully submits it should be entitled to intervene as

a matter of right under FRCP 24(a).  Alternatively, this Court should exercise its discretion to

permit SAPA to intervene under FRCP 24(b).


Dated: November 14, 2022                                    THE LAW OFFICES OF ALEX CRAIGIE


                                                                                  */s/ Alex Craigie*
                                                                                  Alex Craigie

                                                                                  Attorney for Prospective Intervenor
                                                                                  SKYWEST AIRLINES PILOT
                                                                                  ASSOCIATION