THE LAW OFFICES OF ALEX CRAIGIE
Alex Craigie (SBN 167766)
*Alex@CraigieLawfirm.com*
12100 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Telephone: (323) 652-9451

Attorneys for Prospective Intervenor SKYWEST
AIRLINES PILOT ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GREGORY HOROWITZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKYWEST AIRLINES, INC.,<br><br>Defendant.<br><br>and<br><br>SKYWEST AIRLINES PILOT ASSOCIATION (SAPA),<br><br>Intervenor. | CASE NO. 3:21-cv-04674-MMC<br><br>**REPLY OF INTERVENOR SKYWEST AIRLINES PILOT ASSOCIATION TO PLAINTIFF'S OPPOSITION TO MOTION FOR LEAVE TO INTERVENE**<br><br>Assigned for all purposes to the Honorable Maxine M. Chesney<br><br>Hearing Date: January 6, 2023<br>Time:           9:00 a.m.<br>Courtroom:   7<br><br>Complaint Filed: March 22, 2021<br>Action Removed: June 17, 2021 |

**TO THE HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Prospective Intervenor, SKYWEST AIRLINES PILOT ASSOCIATION (SAPA), replies to Plaintiff's opposition to SAPA's Motion for Leave to Intervene as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

SAPA's motion established it is entitled to intervene as of right to protect the legally protectable and bargained-for rights of its national membership. Plaintiff's opposition fails to move the needle. Instead, Plaintiff harps on SAPA's status as a representative organization rather than a dues-collecting union, ignoring this Court's prior determination that its Collective Bargaining Agreement (CBA) with SkyWest is valid under the Railway Labor Act (RLA).

Plaintiff also suggests SAPA has no legally protectable interests, again ignoring the fact that rigid application of California Meal and Rest Break laws will impact its CBA, prejudice California-based pilots, cause labor strife, and pose safety issues. Plaintiff argues SkyWest will protect SAPA's interests, again ignoring that collective bargaining is an adversarial process, that SkyWest is a business –its primary objective being to return value to its shareholders, not the rights and interests of SAPA's member pilots – and that any injunctive relief Plaintiff seeks will require renegotiation of the CBA, all of which reinforces SAPA's need for a seat at the table.

This motion is timely, preceding class certification, summary judgment or settlement negotiations. Plaintiff cannot (and has not) cite any prejudice that will result from SAPA's intervention. Finally, even if this Court finds SAPA is not entitled to intervene as of right (it is), the motion establishes this Court should exercise its discretion to permit SAPA to intervene. Plaintiff does not credibly suggest otherwise. Accordingly, as more fully set forth below, the Court should grant SAPA leave to intervene.

**II.     LEGAL ARGUMENT**

    **A.     Plaintiff Fails to Controvert that SAPA is Entitled to Intervene as of Right**

        **1.     SAPA Has Shown Legally Protectable Interests**

SAPA's members have legally protectable interests under the RLA at risk in this suit.

Plaintiff seeks relief that will drastically change the pay and working conditions for California-based SkyWest pilots and strip away rights contained in SAPA's CBA with SkyWest. These include concerns that a rigid application of California Meal and Rest Break laws will result in negative, disparate impacts on California-based pilots, create labor strife among its members, and pose safety issues for passengers and all crew (flight attendants and pilots) flying with California-based pilots.

Critically important to SAPA members is the seniority-based scheduling system, which permits SAPA members to bid on flight schedules that maximize pay, fit their lifestyles, extra-occupational commitments, and travel interests. This action threatens that system. Plaintiff Horowitz admitted under oath that California Meal and Rest Breaks are incompatible with the realities of pilots' responsibilities while flying,[1] meaning the outcome of this lawsuit could (1) confine California-based SAPA members to very short flights, or "hops," in order to provide timely California Meal and Rest Breaks on the ground; (2) drastically increase unproductive time SAPA members must spend in the airport; and (3) result in less flight time and therefore lower pay.[2] This would irreparably impact the rights for which SAPA bargained with SkyWest.

SAPA also has a legally protectable interest in preventing labor strife among its membership. This could occur if Plaintiff prevails in this action and SkyWest is forced to schedule around California Meal and Rest Breaks for its California-based pilots who are routinely (and necessarily) staffed on flights/pairings with non-California-based pilots. Either (a) non-California-based pilots paired on a flight with a California-based pilot will be forced to be grounded to accommodate the California Meal and Rest breaks, (b) non-California-based pilots

---

[1] Craigie Decl., Ex. 2, August 31, 2022 Deposition Transcript of Gregory Horowitz ("Horowitz Depo.") at 192:7-194:15, Dkt. 43-4, pp.7-9.

[2] The pay formula encapsulated in SkyWest's CBA with SAPA incentivizes flight time over unproductive time spent on the ground.

might be required to keep working while California-based pilots are provided California Meal and Rest Breaks, or (c) non-California based pilots will be required to "deadhead" to California to cover those flights that are too long to accommodate California Meal and Rest Breaks, taking away flying from California-based pilots and impacting non-California based pilot schedules, trips and preferences. Either outcome will result in labor strife, which is a major concern for SAPA.

Similarly, Plaintiff's pay stub claim also threatens SAPA's legally protectable interests. It places the pilots' negotiated pay structure for California-based pilots (and potentially, all pilots) at risk and could subject California based pilots to the extra burden of tracking every work-related task on a timesheet solely so that it can be reported on a pay stub, with no benefit whatsoever to California pilots. Non-California-based pilots will not face this enhanced burden, resulting in disparate treatment among SAPA members. This, too, could lead to labor strife. SAPA clearly has a legitimate, legally protectable interest in ensuring all members receive equal treatment.

Finally, although Plaintiff glibly attempts to minimize this concern,[3] there is a very real risk that, depending on the outcome of this action, SkyWest may close its California bases altogether, in which case all California resident pilots will need to transfer, if possible, to a base in another state. At best, this will result in undesirable additional burdens on California resident pilots who must "commute" on "non-rev" flights from their home in California to a base elsewhere (assuming they are available) before starting their normal workday. At worst, this will result in job losses for California resident SAPA members. These are legally protectable interests.

---

[3] Plaintiff points out that similar relief sought in the *Wilson v. SkyWest* case did not result in closure of any California bases. (Opp., Dkt. 46, p. 6.) This is misleading, as the Northern District Court in *Wilson* denied class certification and the two individual Plaintiffs subsequently dismissed their case, with no declaratory or injunctive relief. (*Wilson v SkyWest Airlines, Inc.*, 19-cv-01491-VC, Dkt. 120, 130-32.) As the *Wilson* Plaintiffs lost, there were no forced closures.

### 2.   This Lawsuit Absolutely Implicates SAPA's CBA

Plaintiff argues SAPA's CBA with SkyWest does not address any issues in this action. (Opp., Dkt. 46, p.3-4.) This is inaccurate and obviously calculated to mislead the Court.

This lawsuit implicates several terms that are the subject of negotiation and are contained in the CBA. For example, the CBA contains policies that SAPA and SkyWest negotiated regarding pilot flight time and crew rest periods (Arnold Declaration in Support of SkyWest Motion to Dismiss ("*Arnold Decl.*"), ¶ 6, Exh. A, Dkt. 1-3, 1-4, p. 106), SAPA member pay stubs (Dkt. 1-4, pp. 53-56) and (timekeeping) duties, and compensation. (Dkt. 1-4, pp. 182-87.)

Plaintiff's action seeks, *inter alia*, declaratory and injunctive relief. (Complaint, Dkt. 1-1, pp. 16-17.) Should Plaintiff prevail on any remaining claim, SkyWest and SAPA will be required to re-negotiate and make changes to the CBA to ensure compliance with any declaratory or injunctive order issued by this Court. It is therefore absurd and insulting to the Court's intelligence to suggest Plaintiff's claims do not touch on and implicate the CBA.

### 3.   SkyWest's Interests Are Divergent and the Airline Will Not Adequately Protect SAPA's Member Pilots' Interests

The Supreme Court has made clear that the "requirement of . . . Rule [24(a) that "existing parties [will not] adequately represent  . . . [the moving party's] interest is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538, n.10 (1972). *Accord, Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001); *Smith v. Pangilinan*; 651 F.2d 1320, 1325 (9th Cir. 1981) ("The burden of demonstrating inadequacy of representation is not a heavy one").

Plaintiff's assertion that SAPA's interests will be adequately represented by SkyWest illustrates Plaintiff's ignorance as to how the system works and shows complete indifference to

SAPA's valid CBA. They argue that labor can be fairly represented by management, SAPA disagrees. Labor wants to represent itself here.

### a. This Court Already Determined SAPA is a Valid Labor Representative

Plaintiff's entire argument is built on the fact that SAPA is described in SkyWest's 2021 Annual Report as an "In-House Association" and not a dues collecting "union." (Opp., Dkt. 46, pp. 2, 6-7) This is a distinction without difference.

SAPA has been the sole representative body of SkyWest pilots for approximately 30 years. SAPA negotiates with SkyWest about pilot pay structure and working conditions. The outcome of these negotiations are voted upon by the pilots and, if approved, incorporated into SAPA's CBA with SkyWest, which this Court already determined was valid under the RLA. (*See*, Sep. 8, 2021 Order, Dkt. 29, pp. 3-4.) This Court said,

> "[C]ontrary to Horowitz's argument, it is readily apparent from the Pilot Policy Manuals that they constitute collective bargaining agreements under the RLA, as they are agreements between a "carrier," SkyWest, and its "employees," the Pilot Association, that address in detail the terms and conditions of all SkyWest pilots' employment"

(Order, Dkt. 29, p.3).

This determination alone puts to rest Plaintiff's suggestion that SAPA is not a legitimate bargaining organization, independent from SkyWest. As such, SAPA is entitled to a seat at the table in a lawsuit that threatens the pilots' legally protectable rights under the CBA.

Plaintiff's position is further undermined by the RLA itself, which provides the following broad definition of "representative" for purposes of the RLA and makes no distinction whatsoever between an "organization" like SAPA and a "labor union." The Act states:

> "The term "representative" means any person or persons, labor union, *organization*, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them."

45 U.S. Code § 151 (emphasis added). Plaintiff cannot use the fact that SkyWest's pilots are represented by an association to negotiate with the airline rather than a dues-collecting union as evidence that SAPA member pilots do not have separate, legally protected interests, often at odds with SkyWest, which deserve protection here.

### b. SkyWest's Interests in Defending this Suit Are Divergent from SAPA

Plaintiff argues that "it is difficult to imagine a case in which a potential intervenor's interest is so aligned with a defendant's." (Opp., Dkt. 46, p.7) Not only does this sidestep the fact that SAPA and SkyWest regularly negotiate at arm's length over working conditions and compensation, but it also ignores the myriad issues *in this case* that are of major importance to SAPA's members but are largely inconsequential to SkyWest.

This is clear from SkyWest's defense strategy thus far. In moving for partial summary judgment, SkyWest submitted robust expert evidence about how a judgment for Plaintiff will adversely impact SkyWest, with little, if any, regard for the inevitable impact on SAPA's member pilots.

SkyWest's forensic economist Darin Lee, PhD, for example, devotes much of his report to discussing how SkyWest will suffer *economically* and *administratively* if Plaintiff wins, without regard to the impact on the lives of SAPA members, including severe disruption of scheduling for California-based member pilots, resulting in less flying time, with a negative impact on pilot compensation, risks of labor strife and possible elimination of California routes and bases.

Dr. Lee focuses on the airline's "predictable cost structure," emphasizing the "predictability of labor costs," and notes SkyWest's concern that "labor is by a wide margin the largest controllable cost for a regional carrier." (Lee Decl. in Supp. of SkyWest Motion for Summary Judgment, Dkt. 48-4, ¶15.) He points out that, "[i]n addition to being prohibitively

costly," attempting to comply with California's meal period and rest break law would result in at least three (3) adverse consequences *for the airline*: (1) it will "[i]ncrease the complexity of operating in California;" (2) "[i]ncrease the cost of providing air service to, from, and within California;" and (3) "[e]xacerbate the pilot shortage." *Id.* at ¶28.

It is crucial that the rights of the SAPA member pilots themselves do not get lost in this analysis. In the airline industry, pilots might be fungible commodities, the costs and burdens of which must be considered when sizing up decisions and policy. Which is why SAPA exists, as the bargaining representative for SkyWest's pilots. Its leaders fight for the rights and working conditions of its members, who are not "fungible commodities." SAPA's strategy and positions in this case will be guided, not by SkyWest's bottom line, but toward shaping an outcome that reflects its members' preferences in compensation and working conditions. Not only is it crucial for SAPA to intervene because its defense strategy is different from SkyWest, but also because SAPA must have a seat at the table for any negotiations, as any resolution will surely require amendment of the CBA, triggering additional issues for negotiation. Labor wants its own voice and SkyWest will not adequately represent SAPA's interests.

**4.     The Opportunity of Prospective Class Members to Opt-Out Will Not Protect the Interests of SAPA's Nationwide Members**

Plaintiff wants to deny SAPA leave to intervene because they claim SAPA's members' interests are automatically protected by virtue of the potential class members' ability to opt-out of the class. This is both misleading and a gross oversimplification.

SAPA represents several thousand pilots, only some of whom are potential class members. Many others are based in other states. As discussed *supra*, should Plaintiff prevail, non-California-based pilots paired on a flight with a California-based pilot will be forced to be grounded to accommodate the California Meal and Rest breaks, and/or (b) non-California-based

pilots might be required to keep working while California-based pilots are provided California Meal and Rest Breaks. Either outcome could result in labor strife, a major concern for SAPA.

It is inaccurate, therefore, to suggest that the opt-out opportunity will adequately protect SAPA's members and therefore the organization should be denied a seat at the table. SAPA is the voice of SkyWest's pilot workforce. That voice must be heard. This motion should be granted.

### B.     This Motion is Timely

#### 1.     SAPA Seeks Intervention at an Appropriate Stage of the Proceedings

Plaintiff argues SAPA's motion is untimely. Timeliness in moving to intervene "is a flexible concept." *U.S. v. Alisal Water Corp.* (9th Cir. 2004) 370 F.3d 915, 921. "[A]n intervenor does not have to move to intervene immediately." *S.E.C. v. Navin*, 166 F.R.D. 435, 439 (N.D. Cal. 1995). "[T]he amount of time which has elapsed since the litigation began is not . . . determinative." *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 129 (D.C. Cir. 1972) (reversing denial of union members' application to intervene filed *seven years* into litigation).

"[T]he stage of the proceedings" is a crucial factor in determining timeliness of a nonparty's bid for intervention. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996). This Court has not yet decided the crucial questions of whether a class should be certified,[4] or liability exists.  Class determination is both a new phase of this litigation and a logical place for SAPA to intervene to protect the interests of its membership. Courts have repeatedly held that intervention may be timely before, at or even after class certification. *See, e.g., Foster v. Gueory* (D.C. Cir. 1981) 655 F.2d 1319, 1324; *Kamakahi v. American Society for Reproductive Medicine* (N.D. Cal., Apr. 27, 2015, No. 11-CV-01781-JCS) 2015 WL 1926312, at *5 [intervention permitted after class certification and case had been pending over 4 years]; *Sherman v. Griepentrog* (D. Nev. 1991) 775 F.Supp. 1383, 1386.

---

[4] SAPA's Motion for Leave to Intervene was originally noticed for hearing on December 23, 2023, before Plaintiff's Motion for Class Certification.

### 2. Intervention Will Not Prejudice the Parties

Plaintiff cannot identify prejudice to any party if SAPA intervenes. Only limited discovery has been completed; no discovery will need to be duplicated. Class certification is currently an open question. The parties have not negotiated toward a settlement and, beyond granting SkyWest's Motion to Dismiss Plaintiff's overtime claim, the Court has not issued any substantive rulings. There is no prejudice. This motion is timely and should be granted.

### C. Plaintiff Fails to Even Argue SAPA is Not Entitled to Permissive Intervention

In the event this Court concludes SAPA has not met the requirements for intervention as of right (it has), the Court should exercise its discretion and grant permissive intervention. In his opposition, beyond pointing out that permissive intervention is within this Court's discretion and suggesting that "SAPA's intervention serves no purpose," (Opp., Dkt. 46, p.8) Plaintiff fails to engage in the necessary inquiry regarding why SAPA should not be permitted to intervene. SAPA's motion established "it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir.1998). If intervention of right is not granted, this Court should exercise its discretion and grant SAPA permissive intervention.

## III. CONCLUSION

As fully set forth in its motion, SAPA is entitled to intervene as a matter of right. SAPA has a legally protectable interest relating to the claims and relief sought in this action; it is situated such that the disposition of the action without intervention would impair SAPA's ability to protect that interest; and that SAPA's interest is not adequately represented by Plaintiff or SkyWest. Plaintiff's opposition fails to offer any persuasive fact or argument to controvert any of this.

Finally, even if the Court finds SAPA is not entitled to intervention as of right, the Court should nonetheless exercise its discretion and permit SAPA to intervene. SAPA shares common

questions of law and fact with the main action, the motion is timely, and this Court has an independent basis for jurisdiction over the SAPA's defenses to Plaintiff' claims. SAPA respectfully request the Court grant its motion for leave to intervene.

Dated: December 5, 2022                                    THE LAW OFFICES OF ALEX CRAIGIE


By: */s/ Alex Craigie*
    Alex Craigie

Counsel for Intervenor
SKYWEST AIRLINES PILOT
ASSOCIATION