**COHELAN KHOURY & SINGER**
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Jeff Geraci (SBN 151519)
jgeraci@ckslaw.com
Rosemary C. Khoury (SBN 331307)
rkhoury@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone:	(619) 595-3001
Facsimile:	(619) 595-3000

**DAVTYAN LAW FIRM, INC.**
Emil Davtyan (SBN 299363)
support@davtyanlaw.com
880 E. Broadway
Glendale, CA 91205
Telephone:	(818) 875-2008
Facsimile:	(818) 722-3974

Attorneys for Plaintiff Gregory Horowitz, on behalf of himself
and all others similarly situated and aggrieved

# UNITED STATES DISTRICT COURT

# NOTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| GREGORY HOROWITZ, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>SKYWEST AIRLINES, INC., a Utah Corporation; and DOES 1 Through 10, inclusive,<br><br>Defendants. | Case No. 21-CV-04674-MMC<br><br>**CLASS AND REPRESENTATIVE ACTION**<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:	January 6, 2023<br>Time:	9:00 a.m.<br>Judge:	Hon. Maxine M. Chesney<br>Courtroom:	7<br><br>Complaint filed:	March 22, 2021<br>Removal date:	June 17, 2021<br>Trial date:	Not set |

## I. INTRODUCTION

Plaintiff alleges SkyWest chose policies which deprived class members of compliant wage statements, meal and rest periods, and reimbursement for cellphone use, in violation of California law. Plaintiff has shown why these claims are suitable for class treatment. Defendant concedes numerosity. It argues typicality is not satisfied but this is based on erroneous defenses. Predominating common questions which should be decided on a class basis are established. SkyWest's opposition fails to show otherwise.

## II. DEFENDANT MISSTATES THE CLAIMS TO BE CERTIFIED

Much of SkyWest's papers oppose theories not advanced by Plaintiff. For example, it devotes significant space arguing compliant meal breaks cannot be taken during flights. This may or may not be correct, but it is not at issue in this case.

Defendant also devotes considerable space to arguments about difficulties Pilots would face if forced to track "work related" activity (although never defining "work related" or why that would not be all, or virtually all, tracked automatically as Pilots' time is now).

Defendant misstates what is at issue in these claims and then argues against that. Plaintiff contends SkyWest applied policies which deprived class members of compliant wage statements, meal and rest periods, and reimbursement for cellphone use. It is not Plaintiff's burden, now, at summary judgment, or at trial, to show the ways SkyWest <u>might</u> comply with its obligations under California law. Plaintiff must only show, as to the alleged violations sought to be certified, that common questions of law or fact "predominate over any questions affecting only individual members," and a class action is "superior to other available methods for the[ir] fair and efficient adjudication." Fed. R. Civ. P. Rule 23(b)(3).

Plaintiff has shown predominating common questions here, the determination of which will resolve an issue central to the validity of each of the claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350; 131 S. Ct. 2541, 2551 (2011). It is not Plaintiff's burden at this stage to show he will prevail as to any question, only that the questions will yield common answers that are "apt to drive the resolution of the litigation," and they predominate over any purely individual issues. *Id.*

- 1 -

### III. PLAINTIFF'S WAGE STATEMENT CLAIM SHOULD BE CERTIFIED

Wage statements must contain all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate. An employee must be able to "promptly and easily determine" these items "from the wage statement alone," "without reference to other documents or information." *Ward v. United Airlines*, 986 F.3d 1234, 1237-38 (9th Cir. 2021).

A violation of 226(e) involves establishing "(i) a violation of Section 226(a); (ii) a resulting injury, and (iii) that the violation was 'knowing and intentional.'" *Ward v. United Airlines, Inc.,* 2022 U.S.Dist.LEXIS 140091, at *17 (N.D.Cal. Aug. 7, 2022, No. C 15-02309).

"[SkyWest's] wage statements do not show the total hours worked, applicable hourly rates nor the number of hours worked at each rate. As such, pilots cannot promptly and easily determine the relevant information from the wage statements alone. [SkyWest] may not require its employees to refer to documents outside of the four corners of the wage statement to determine information required by Sections 226(a)(2) and (a)(9). Plaintiffs have thus established the injury element on their class claims."

SkyWest offers no basis not to certify this claim. It contends its pay policy properly <u>compensated</u> Pilots, and based on that, asserts an affirmative defense it had a "good faith belief" its <u>wage statements</u> were compliant. This fails for several reasons. SkyWest's pay policy is not at issue in this motion. Whether an employer provided wage statements required by law is different from, and not dependent on, whether it properly compensated employees.

It is questionable whether there is a "good faith" defense to Section 226 claims. *Sobaszkiewicz v. FedEx Corp*., 2022 U.S.Dist.LEXIS 158353, at *25-26 (N.D.Cal. Sep. 1, 2022, No. 18-cv-07553-PJH); *Senne v. Kansas City Royals Baseball Corp*., 2020 U.S. Dist. LEXIS 259693 (N.D. Cal. Mar. 15, 2022); *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1027-28 (E.D. Cal. 2015).

If a good faith defense can apply to section 226 claims, SkyWest cannot show it here. An example of compliance efforts establishing good faith is found in *Arroyo v. Int'l Paper Co*., 2020 U.S.Dist.LEXIS 32069 (N.D.Cal. Feb. 24, 2020, No. 17-cv-06211-BLF).

Defendant in *Arroyo* introduced substantial evidence it understood its obligation to comply, intended to comply, and made efforts to comply, including "an internal audit of IPC's compliance with wage statement requirements for California," and,

Scharff and other IPC employees attended a meeting on March 30, 2011 to discuss those state's requirements, including requirements found in California Labor Code § 226. Scharff Decl. ¶ 7. Scharff and the other meeting members compared each requirement of § 226 to IPC's Workbrain wage statements to determine whether IPC's Workbrain wage statements were in compliance. *Id.* at *39-41.

The good faith demonstrated in *Arroyo* cannot be compare with SkyWest's conduct.

Defendant in *Arroyo* introduced substantial evidence it understood its obligation to comply, intended to comply, and made efforts to comply. These included a declaration from a lead employee obtaining materials from the American Payroll Association, legal updates regarding wage statements from the Company's third-party vendor, organizing "<u>an internal audit of IPC's compliance with wage statement requirements for California</u>," and, Scharff and other IPC employees attended a meeting on March 30, 2011 to discuss those state's requirements, including requirements found in California Labor Code § 226. Scharff Decl. ¶ 7. Scharff and the other meeting members compared each requirement of § 226 to IPC's Workbrain wage statements to determine whether IPC's Workbrain wage statements were in compliance. *Id.* at *39-41.

SkyWest's position is also not supported by an earlier decision it received. *Wilson v. Skywest Airlines, Inc.,* 2021 U.S. Dist. LEXIS 129507, at *2 (N.D. Cal. July 12, 2021, No. 19-cv-01491-VC). The District Court applied a good faith defense, but erred when it found SkyWest "had a good faith belief that it was not violating California law based on numerous decisions that the dormant Commerce Clause precluded applying California labor laws (including section 226) to interstate airline workers." *Id.,* at *7.

The California Supreme Court stated on June 29, 2020, that "if a pilot or flight attendant has a designated home-base airport, section 226 would apply if that airport is in California…" *Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 760 (2020).

In July 2018, the same District Court deciding *Wilson* found years earlier the dormant Commerce Clause did not apply, relying in part on a published case holding that, "A 'knowing and intentional' violation requires a showing that the defendant knew that facts existed that brought its actions or omissions within the provisions of section 226(a). *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116 (N.D. Cal. 2014)." *Bernstein v. Virgin Am., Inc.*, 2018 U.S.Dist.LEXIS 114719, at *17 (N.D.Cal. July 9, 2018, No. 15-cv-02277-JST).

The *Virgin* decision was upheld February 23, 2021. *Bernstein v. Virgin America, Inc.*, 990 F.3d at 1167-1170 (9th Cir. 2021).

The *Wilson* court also erred when it found SkyWest "had a good faith belief it was complying with section 226 by listing the plaintiffs' credit hours, which is the metric more closely tied to their compensation than total hours worked, and thus the metric that better serves section 226's purpose." *Wilson v. Skywest Airlines, Inc.* (N.D.Cal. July 12, 2021, No. 19-cv-01491-VC), at *7-8. That reasoning was never correct. At all times compliance required an employee be able to understand the basis of the pay from a single document. Even interpretations allowing "credits," rather than hours to be shown, still required an employee know which "credit" formula was used to calculate wages. That does not appear possible in *Wilson,* and it has definitely never been possible with the wage statements at issue here.

Even if SkyWest may show credits, rather than hours its "wage statement does not allow pilots to determine which of any number of potentially applicable" credit formulas has been applied." *Ward v. United Airlines, Inc.*, 2022 U.S.Dist.LEXIS 140091, at *13-14 (N.D.Cal. Aug. 7, 2022, No. C 15-02309 WHA). If SkyWest was ever able to argue its good faith, that ended in July 2018, but no later than June 29, 2020.

More importantly here, SkyWest may argue its "good faith," and the Court's decision will resolve the issue for the class "in one stroke."

### IV.   PLAINTIFF'S CELLPHONE CLAIM SHOULD BE CERTIFIED

"The relevant question is not whether [SkyWest] explicitly required [Pilots] to use their personal cell phones through a company-wide policy; it is whether it was necessary under the circumstances for [Pilots] to use their personal cell phones when discharging their duties."

- 4 -

*Sinohui v. CEC Entm't, Inc.* (C.D.Cal. Mar. 16, 2016, No. EDCV 14-2516-JLS 2016 U.S.Dist.LEXIS 192363, *35-36; *Castro v. ABM Indus*. (N.D.Cal. 2018) 325 F.R.D. 332, 335.

SkyWest offers evidence which shows Pilots do routinely use cellphones for checking in, calling maintenance, being available while on reserve, and other work duties. While SkyWest argues the use of cellphones is only for "convenience," even that, when the use is so widespread, suggests it is necessary under the circumstances.

Some of SkyWest's declarations ambiguously claim certain work tasks could be done with "landlines," rather than cellphones, but it is unclear how many Pilots have landlines. There is no reason to believe Pilots have greater landline use than the population in general. https://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless202212.pdf, p. 1, 7, Geraci Decl. ¶4. Request for Judicial Notice. It appears only about 15-36% of Pilots may have landlines.

SkyWest strains to argue Pilots have a choice whether to use a cellphone to discharge their duties. For example, in the only declaration submitted from a Chief Pilot, he states:

> If we are not at an airport with a maintenance base or if it is the last flight of the day, the pilots must also contact maintenance control using a phone in the terminal or their cell phone if they elect to do so. Dkt. No. 47-1, Cruser Decl., p. 66 (396), ¶24, 7:25-27.

Dr. Saad quotes from a declaration to try and show cellphone use is purely for convenience. "Oftentimes, I would also call maintenance to explain the exact issue in detail. I used my cell phone by choice, but I could have used the phone just inside the terminal." Dkt. No. 47-1, quoting Blake Decl., p. 27, ¶69, 27:6-10.

Again, this makes no sense. Passengers certainly want maintenance issues to be explained the exactly "in detail," and, of course, Pilots and mechanics do too.

SkyWest concedes, as it must, Pilots use cellphones all the time for work, but argue there are always "alternatives," and cellphone use is for convenience. The idea that a Pilot, attempting to deal with a maintenance issue would leave the aircraft, then call maintenance makes no sense. Like a car, a mechanic would want to know what the Pilot is looking at, what the instruments show, or ask that something be tried to correct the problem, such as powering

- 5 -

down and powering up an aircraft. Leaving to use a phone in the terminal would either prevent the maintenance "necessary under the circumstances," or require Pilots to go back and forth between the terminal and the aircraft. To suggest Pilots remain in planes and use their cellphones to ensure mechanical issues are dealt with in the fastest, most exacting way possible is for the Pilot's convenience is absurd.

SkyWest's arguments do not show this issue is not suitable for class treatment, but the opposite. For example, Pilots describe a policy allowing them to do whatever they like while on reserve duty. See, for example, Dkt. No. 47-1, Bixby Decl., p. 174 ¶24, 4:10-12; Capps Decl., p. 186, ¶8, 4:10-13; Limich Decl. ¶7, 3:24-28. That is only possible with a cellphone.

The need for and use of cellphones by Pilots is different than many occupations. As SkyWest stresses throughout its filings, Pilots must be ready at all times and must be available to be contacted to learn about the frequent "irregular operations," it refers to as "IROP's." While an email might be received on a Company issued device, or a Pilot might be standing near a gate that has a landline, they must always be available to contacted with information which is always important, frequently urgent, and often critical. If there were ever an occupation in which it is "necessary under the circumstances [ ] to use their personal cell phones when discharging their duties," this is it.

SkyWest's argument that, if cellphone use is necessary, it is already reimbursed through a "per diem" payment, fails. There is no reference in the Pilot Policy Manual to reimbursement for cellphone use. SkyWest claims a "per diem" payment which its 30(b)(6) witness Mr. Spagnolo testified was for "food," but later, after a break, and a question by Defense counsel, claimed is a "catchall" that could be for anything, includes cellphone use. Dkt, No. 54-3, Exh. 2, 108:9-13, 115:3-25. The "per diem" policy makes no reference to any other expense, and is "prorated by portions of an hour," a measurement hardly suitable to reasonable cellphone reimbursement. Geraci Decl. ¶3, Exh. 1, Pilot Policy Manual, 3009.1, SkyWest 014642.

Also curious is that other, less common types of expenses are specifically listed as eligible for reimbursement, such as parking, transit passes, and passport renewal, but personal cellphone is not. *Id.*

Defendant's suggestion its "per diem" policy could create individual issues preventing certification of the cellphone claim has no basis, but it cannot prevent certification.

SkyWest fails to acknowledge the duty to reimburse was triggered when it knew or had reason to know Pilots incurred an expense. *Stuart v. Radioshack Corp*. (N.D. Cal. April 30, 2009) 641 F.Supp.2d 901, 904. "Once the employer has such knowledge, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." *Id.* The late suggestion SkyWest had a "catchall" "per diem" policy covering cellphone use, defies logic, but also provides no basis to deny certification.

## V.   PLAINTIFF'S MEAL AND REST CLAIMS SHOULD BE CERTIFIED

There is no dispute SkyWest has never had a meal or rest period policy for Pilots. Dkt. No. 47-1, p. 83, Fn. 4. SkyWest introduces declarations to support its argument meals and rest periods were not wanted, and Pilots are content with breaks between flights.

SkyWest conflates time Pilots spend between flights with a break policy. There is no opportunity to take a compliant break, and a break cannot be considered taken, or waived, just because there are more than 10 minutes or 30 minutes between flights, or other duties, when an employee must remain constantly available and is frequently interrupted.

SkyWest's misunderstands its violation and its liability. "No issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized, an employee has no opportunity to decline to take it." *Brinker, supra*, 53 Cal.4th at 1033. But it misapprehends the effect on class certification more.

"Brinker instructs that in ruling on the predominance issue in a certification motion, the court must focus on the plaintiff's theory of recovery and assess the nature of the legal and factual disputes likely to be presented and determine whether individual or common issues predominate. Here, plaintiffs' theory of recovery is based on [SkyWest's] (uniform) lack of a rest and meal break policy and its (uniform) failure to authorize employees to take statutorily required rest and meal breaks. The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof." *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1150.

SkyWest's argument Pilots sometimes have time for rest or meals between flights, cannot create individual issues or defeat class certification. "Although an employer could potentially defend these claims by arguing that it did have an informal or unwritten meal or rest break policy, this defense is also a matter of common proof." *Bradley v. Networkers Internat., LLC, supra*, at 1150.

SkyWest tries to distinguish *Bradley*, arguing, "In that case, the employer's lack of a policy authorizing MRBs was coupled with a uniform practice of making it difficult for employees to stop work." Dkt. 47-1, 14:12-14.

As noted throughout, the nature of a Pilot's work makes it difficult, or impossible to stop work. Even between flights and other duties, Pilots remain alert and available and are frequently contacted to ensure operations can continue efficiently.

SkyWest has never argued it attempted to comply with California's rest and meal laws. "With respect to rest breaks, California law expressly permits employers to seek exemptions from the rest break requirements if compliance 'would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer.' [Pilots] seem like the prime example of employees who would qualify for such an exemption." *Wilson v. Skywest Airlines, Inc*., 2021 U.S.Dist.LEXIS 129507, at *4-5.

"As to meal breaks, California law allows for 'on-duty' meal periods if "the nature of the work prevents an employee from being relieved of all duty" and the parties agree to an on-duty meal break 'by written agreement.' IWC Wage Order 9-2001 § 11(C). For the reasons just given, the nature of [Pilot's] work seems precisely the kind that prevents them from being relieved of all duties while taking meal breaks." *Wilson v. Skywest Airlines, Inc*., 2021 U.S.Dist.LEXIS 129507, at *4-5.

SkyWest has never sought these well-known and obvious protections because that would be an acknowledgment it is subject to California's rest and meal laws.

If an employer's records do not show compliant meal periods, "then a rebuttable presumption arises. Employers can rebut the presumption by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been

- 8 -

provided compliant meal periods during which they chose to work." *Donohue v. AMN Services, LLC,* 11 Cal. 5th 58, 77 (2021).

SkyWest cannot present evidence it compensated the Class for noncompliant meal periods. Dkt. 54-3, Exh. 2 at 112:24-113.1. SkyWest cannot produce class-wide evidence it "provided compliant meal [or rest] periods during which [Pilots] chose to work," as it had no meal or rest policy, could not provide compliant breaks, and it was not possible for class members to waive breaks never offered. *Bradley v. Networkers Internat., LLC, supra*, at 1150.

If SkyWest's liability is not summarily adjudicated, "'Representative testimony, surveys, and statistical analysis,' along with other types of evidence, 'are available as tools to render manageable determinations of the extent of liability.'" *Donohue v. AMN Services, LLC, supra* at 77 (quoting *Brinker*).

Class damages will be calculated by multiplying the statutory penalty of one hour of premium pay for each break not provided, by multiplying each class members regular rate of pay by each shift of five or more hours (first meal period), ten or more hours (second meal period), and by each period of 3.5 hours or more (rest period), limited to one meal and one rest period penalty per shift. Labor Code § 226.7, *Brinker, supra*, 53 Cal.4th at 1029, 1035, 1042.

"The United States Supreme Court decided in *Anderson v. Mt. Clemens Pottery Co., supra*, that in cases such as the present one, where the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee." (citation omitted) *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727. "[T]he rule is clear: the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d at 1155.

This is an appropriate case to apply *Mt. Clemens.* SkyWest has never attempted to comply with rest and meal laws, never sought an exemption or use of on-duty meal periods. Employees should not bear the consequences of an employers' non-compliance with the law.

## VI.   CLASS PARTICIPATION

SkyWest questions whether California pilots want to join the proposed class. Opposition to Certification, 21:3-6. Defendant are confusing this Rule 23 class with an opt-in,

- 9 -

Fair Labor Standards Act (FLSA) class. Of course, it is unnecessary, and impossible, to "join" this Rule 23 class, and this argument is irrelevant to any class certification issue.

Similarly, the nature of SkyWest's policies, and nature of the class claims, particularly the wage statement claim, make declarations unnecessary.

SkyWest fails to acknowledge a notice was sent to 2,602 California Pilots in July 2022. Geraci Decl. ¶2. Every Pilot had the opportunity to exclude their contact information from this class action. Only 10 asked to be excluded. *Id.*

Defendant now tries to make much of submitting declarations from less than 1% of Pilots. Claiming, "the pilot declarations confirm that they understand Plaintiff's claims and the remedies he seeks, but do not support this case." The declarations confirm they were prepared by attorneys. More importantly, class certification is not based on what Plaintiff wants, or what SkyWest claims less than 1% of Pilots wants. Certification is based on application of the law.

## VII.   CONCLUSION

Plaintiff requests the Court certify the proposed Class and Subclasses, appoint Plaintiff Gregory Horowitz Class Representative, and Cohelan Khoury & Singer and Davtyan Law Firm as Class Counsel, and order notice to the Class.

Respectfully submitted,

COHELAN KHOURY & SINGER
DAVTYAN LAW FIRM, INC.

Dated: December 19, 2022

By: s/ Jeff Geraci
    Jeff Geraci, Esq.
Attorneys for Plaintiff Gregory Horowitz,
for himself and all others similarly situated